IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

|  |  |
|---|---|
| KATRIDA WILLIAMS, | ) )  |
| *Plaintiff* | ) ) |
| v. | ) ) Civil No. 1:19-cv-255 |
|  | ) Hon. Liam O'Grady |
| VIRGINIA POLYTECHNIC INSTITUTE & STATE UNIVERSITY, | ) ) ) |
| *Defendant.* | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Katrida Williams has sued her former employer, Defendant Virginia Polytechnic Institute and State University ("Virginia Tech"), in a three-count complaint. Count I alleges a failure to accommodate her disability, Count II alleges that she was discriminatorily terminated because of her disability, and Count III alleges she was terminated in retaliation for protected activity, all in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. This matter is before the Court on Virginia Tech's motion for summary judgment on each count, and Ms. Williams' cross motion for partial summary judgment on Count I only.

### I. BACKGROUND

Ms. Williams was formerly employed by Virginia Tech as a Supplemental Nutrition Assistance Program Education Extension Agent ("SNAP-Ed Agent") from October 12, 2015, until on or about March 26, 2018. The essential functions of a SNAP-Ed Agent include recruiting volunteers, training them on nutritional education and physical activity programs, and

conducting training and collaboration on policies, systems, and environmental changes in the Agent's service area communities.

Ms. Williams suffers from a mood adjustment disorder and generalized anxiety disorder. In September of 2017, Ms. Williams experienced a flare up of her disability. She applied for and was granted leave under the Family and Medical Leave Act ("FMLA"). She also applied for and received short-term disability benefits through Virginia Tech's insurer, effective September 12, 2017. The short-term disability benefits ran concurrently with her FMLA leave. Before she went on leave she was meeting her employer's job expectations.

On December 27, 2017, Ms. Williams requested to return to work. She provided Virginia Tech a return to work release form, which provided she could return to work part time with restrictions, signed by Ms. Margo Sills, a Licensed Professional Counselor. Ms. Williams reported to work on January 3, 2018. Virginia Tech advised Ms. Williams that she must remain on sick leave and could not work until the university determined whether her restrictions could be accommodated or not.

In an email that day, Virginia Tech's Human Resources manager Ms. April Wood noted to another Human Resources employee Ms. Kimberly Hodge that the release stated Ms. Williams could "complete duties in the job description" as of February 1, but "[t]he part that won't work is 'at employee's discretion.'" Ms. Hodge replied that "the return to work coordinator . . . suggests that the restrictions not be accommodated, but ultimately the decision is up to the department."

The next day, January 4, 2018, a third Human Resources employee, Ms. Mary Christian sent an email to Ms. Wood and Ms. Hodge stating that Virginia Tech was "unable to accommodate" Ms. Williams. She also explained that the next available reevaluation date would be March 1, and after that time Virginia Tech would review and assess a new medical note.

Ms. Pamela Vickers is Virginia Tech's disability coordinator. She was not consulted regarding the December 27 return to work form, or the January 4 decision not to accommodate Ms. Williams.

Ms. Williams contacted Virginia Tech regarding her proposed accommodations on January 18, 2018. In an email to Ms. Hodge, she asked why Virginia Tech was unable to accommodate her and recommended a reevaluation date. She received a response the next day, which stated only that the university is often "unable to accommodate restrictions and must wait until the employee is release[d] as full-time/full-duty without any restrictions."

On February 27, 2018, Ms. Sills emailed Ms. Wood, Ms. Christian, and Ms. Hodge notifying them that she would provide a second return to work release form. That morning, those Virginia Tech personnel and others participated in an email conversation about the situation. During the email thread, Ms. Wood noted that if Virginia Tech had relayed to Ms. Williams or Ms. Sills that the problem with the prior release form was its use of the word "discretion," the current misunderstanding may have been avoided. Ms. Hodge replied to that email and, for the first time, copied Ms. Vickers on that chain. Ms. Vickers asked why she and "ADA and Accessibility Services [were not consulted immediately when the initial return to work was received."

At the end of February, Ms. Vickers contacted Ms. Williams to discuss accommodations and her reevaluation. They engaged in at least three telephone conversations, one of which was a March 6 conference call including Ms. Sills. Ms. Williams asked Ms. Vickers to communicate directly with Ms. Sills about her proposed accommodations.

On March 9, 2018 Ms. Sills emailed Ms. Vickers. Ms. Sills stated that she believed Ms. Williams was ready to return to work since January, but will need an adjustment period to "work up to the duties she was doing before she took her leave." The email then lists "accommodations

and recommendations [Ms. Sills] believe[d] could help [Ms. Williams] on her transition back to work." That list is below:

> 1. Welcome back meeting with her team and/or supervisor(s) upon her return and once a week as a check in until released to full-time w/out restrictions, also to discuss work related concerns[.]
> 2. Work 4-5 hours a day, 3-4 days per week for the 1st 2 weeks (12th–25th), 5-8 hours a day, 4-5 days a week for the last week of March (26th–31st). Up to Miss Williams' discretion.
> 3. Gradual work up to her full job duties. Giving Miss Williams the ability to decipher what she's ready for.
>> a. Limit trainings she conducts, initially, up to Miss Williams' discretion[.]
>> b. Limit travel, initially, up to Miss Williams' discretion[.]
> 4. Freedom to shut her office door at choice times a day, if needed, without ramification[.]
> 5. Ability to take time off and/or work her schedule around her appointments, if necessary[.]
> 6. Ability to telework, if possible[.]

The email invited Ms. Vickers' feedback and further contact. Attached to the email was a revised return to work release form, which provided for an adjustment period of part time work ending on March 31. It also incorporated a separate document, listing several alternative proposed accommodations, by reference.

After receiving Ms. Sills' email, on the morning of March 9, Ms. Wood emailed Ms. Vickers indicating approval for some of the proposed accommodations and disapproval for others. Ms. Vickers called Ms. Williams and left a voicemail stating the proposed accommodations were too restrictive, and that she was happy to speak with Ms. Williams but would leave the office at noon.

Virginia Tech has a policy of automatically enrolling personnel who expend six months of short term disability into long term disability. The short-term disability coordinator called Ms. Williams and notified her that her employment would be terminated on March 12, 2018, the last day of her short-term disability. After that, because Ms. Williams was enrolled in long term disability and no longer working, Virginia Tech ceased considering her accommodation requests.

While Ms. Williams was on leave since September, no one was performing her job duties. Also, Virginia Tech's policies can allow a gradual build up to a full schedule and full duties as a reasonable accommodation. This has been a reasonable accommodation provided to Virginia Tech employees in the past.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of establishing the basis for its motion and identifying the evidence which demonstrates the absence of a genuine issue of material fact. *Id.* Once the moving party satisfies its initial burden, the opposing party may show by means of affidavits or other verified evidence that a genuine dispute of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

While the facts and all justifiable inferences should be considered in the light most favorable to the nonmovant, *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 312 (4th Cir. 2013), courts must not resolve disputed facts, weigh the evidence, or make credibility determinations, *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)). When considering cross-motions for summary judgment, courts consider each motion separately and on its own merits. *Defs. of Wildlife v. N. Carolina Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014). "In considering each motion, [courts] 'resolve all factual disputes and any competing,

rational inferences in the light most favorable to the party opposing that motion.'" *Id.* (quoting *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

"[T]he mere existence of **some** alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012) (citation omitted). "Mere speculation by the non-movant cannot create a genuine issue of material fact." *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) (*Cox v. County of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001)). Where the nonmoving party fails to make a showing on an essential element of the claim for which he bears the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322-23.

### III. ANALYSIS

As an initial matter, the parties agree that Plaintiff's ADA claims are barred by the Eleventh Amendment. Because Virginia Tech is an agency of the Commonwealth of Virginia, established by Va. Code § 23.1-2600 *et seq.*, the ADA does not create a private action for damages against Virginia Tech. *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374 (2001). Ms. Williams' Rehabilitation Act claims, however, are not similarly barred.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. "To the extent possible,

[courts] construe the ADA and Rehabilitation Act to impose similar requirements" despite their different statutory language. *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012). However, in recognition of the different statutory requirements "regarding the causative link between discrimination and adverse action," courts recognize that ADA and Rehabilitation Act claims differ as to the causation element which a plaintiff must show. *Baird ex rel. Baird v. Rose,* 192 F.3d 462, 468–69 (4th Cir. 1999); *see also id.* Thus, to establish liability under the ADA or Rehabilitation Act, a claim must demonstrate the same elements except causation under the Rehabilitation Act must occur "solely by reason of" the disability. 29 U.S.C. § 794; *see also Halpern*, 669 F.3d at 461-62.

## A. Failure to Accommodate

Ms. Williams asserts that Virginia Tech refused to accommodate her by two discrete acts occurring January 4, 2018, and March 9, 2018. She instituted this action on March 1, 2019, more than one year after January 4, 2018. Rehabilitation Act claims accrue when a plaintiff knows or has reason to know of the injury upon which the action is based, and a refusal to accommodate is a discrete act of discrimination. *A Soc'y Without A Name v. Virginia,* 655 F.3d 342, 348 (4th Cir. 2011); *see Hill v. Hampstead Lester Morton Court Partners LP*, 581 F. App'x 178, 181 (4th Cir. 2014). Accordingly, Ms. Williams' claim for Virginia Tech's January 4, 2018 action accrued on that day. But in Virginia, Rehabilitation Act claims are subject to a one-year statute of limitations in Virginia. *Wolsky v. Med. Coll. of Hampton Roads,* 1 F.3d 222, 225 (4th Cir. 1993). Ms. Williams' claim arising out of a failure to accommodate on January 4, 2018 is therefore time barred. The claim for Virginia Tech's March 9, 2018 action is timely and survives.

To establish a *prima facie* failure to accommodate claim, Ms. Williams must show: "(1) that [she] was an individual who had a disability within the meaning of the statute; (2) that the

employer had notice of [her] disability; (3) that with reasonable accommodation [she] could perform the essential functions of the position ...; and (4) that the employer refused to make such accommodations." *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir.2013) (quoting *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)) (discussing the ADA); *accord Reyazuddin v. Montgomery Cty., Maryland*, 789 F.3d 407, 414 (4th Cir. 2015) (discussing the Rehabilitation Act). There is no dispute that the first and second elements are met.

### (1) Reasonable Accommodation

Virginia Tech argues that Ms. Williams failed to identify a reasonable accommodation. There is no dispute that Ms. Williams did in fact identify accommodations. The question is whether they were reasonable.

Ms. Williams' Return to Work Release form, dated March 9, 2018, authorizes part time work beginning on March 12 and incrementally increasing until March 31. Dkt. 21-7 at 12; Dkt. 17-6. The additional comments section noted that an adjustment period was necessary for Ms. Williams, and referred to a separate attached sheet which listed additional accommodations she viewed as potentially effective. Those accommodations included, *inter alia*, breaks; lessened work load; work from home, schedule flexibility, and moving to another department. In disputing this third element, Virginia Tech contends that Ms. Williams' accommodations were unreasonable as a matter of law, and that Ms. Williams could not perform essential functions of the job with a reasonable accommodation.

"The burden of identifying an accommodation . . . rests with the plaintiff, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable." *Lamb v. Qualex, Inc.*, 33 F. App'x 49, 59 (4th Cir. 2002). Employers are not required to provide "the exact accommodation that the employee requested," and may instead provide "an alternative reasonable accommodation" at their discretion. *Reyazuddin*, 789 F.3d at

415. "Whether an accommodation is reasonable is a generally a question of fact for the jury." *Id.* at 416 (citing *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994)). Reasonable accommodations are those which are feasible or plausible. *Id.* at 415 (citing *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02 (2002)). They may include job restructuring, part time or modified work schedules, or reassignment to a vacant position. *See* 42 U.S.C. § 12111(9); *accord id.* Indefinite leave is not a reasonable accommodation. *Halpern*, 669 F.3d at 465. Yet "[s]ome employees . . . are unable to provide an absolutely assured time for their return to employment, but that does not necessarily make a request for leave to a particular date indefinite. Each case must be scrutinized on its own facts." *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 648 (1st Cir. 2000); *accord Equal Employment Opportunity Comm'n v. Manufacturers & Traders Tr. Co.*, 402 F. Supp. 3d 201, 221 (D. Md. 2019). "Although determination of the reasonableness of a proposed modification is often fact-specific, a court may grant summary judgment in favor of a defendant if the plaintiff fails to present evidence from which a jury may infer that the accommodation is 'reasonable on its face, *i.e.*, ordinarily or in the run of cases,' or if the defendant establishes as a matter of law that the proposed modification will cause 'undue hardship in the particular circumstances.'" *Halpern*, 669 F.3d at 464 (quoting *Barnett*, 535 U.S. 391, 401-02).

There is a genuine dispute of material fact as to the reasonableness of the accommodations identified by Ms. Williams. On its face, the Return to Work Release form identifies a modified work schedule—widely recognized as a reasonable accommodation in the run of cases—with an end date. The form reflects that Ms. Williams was released to work 4-5 hours per day, 3-4 days per week between March 12 and March 25, then 5-8 hours per day, 4-5 days per week between March 26 and March 31. The form further noted that Ms. Williams

could be released to full time work with no restrictions on April 1 "[i]f all goes well," and that her "work hours to be @ Miss Williams' discretion."

Virginia Tech argues that the qualifying language, "if" and "discretion," would necessarily reallocate Ms. Williams' essential job functions by granting her discretion in her duties and hours, and that it would have had the effect of granting indefinite leave. Virginia Tech also argues that the depositions of Ms. Williams and Ms. Sills further support those conclusions. But Ms. Williams' evidence enables a jury to infer she was proposing an accommodation which is reasonable on its face. First, the attached sheet proposed a number of alternative accommodations, some of which may be feasible and some of which may not. Second, the discretionary hours may reasonably be read to refer to the number of hours within the ranges which are set forth on the sheet. Third, the fact that Ms. Sills prefaced her full-time release with "[i]f all goes well" may not render Ms. Williams' proposed accommodation indefinite considering the document identifies an end date, March 31. Fourth and finally, the discretion referred to in the depositions, and the fact that Ms. Sills would to this day recommend an adjustment period as Ms. Williams reenters the workforce are consistent with the modified schedule which the form proposed. There is, accordingly, a genuine dispute of material fact as to whether the accommodation identified by Ms. Williams was reasonable.

There is also a genuine dispute of material fact as to whether Ms. Williams could perform the essential functions of her job with a reasonable accommodation. Virginia Tech has identified two sources of support for this argument: the conditionality of Ms. Williams' ultimate return—an indefinite leave argument—and Ms. Vickers' testimony and notes which reflect an admission from Ms. Williams that she could not perform essential functions.[1] The indefinite leave

---

[1] *See, e.g.* Dkt. 24-2 at 2 (Ms. Vickers' notes from a phone conversation reflecting that when asked "[w]hat do you think you need in order to do your essential functions?" Ms. Williams replied "I am not sure lots of tasks.")

argument is sufficiently addressed above.  Virginia Tech's evidence, however, is contested by Ms. Williams, who disputes that she ever made that admission,[2] and points to other documentary evidence—Ms. Sills' notes—which reflect that she could perform her essential duties.  Since whether the admission occurred is a fact, is genuinely disputed, and bears on an element of the claim, and because this Court may neither resolve disputes nor weigh conflicting evidence, this is a genuine dispute of material fact.

### (2) Refusal to Accommodate

The fourth element in a failure to accommodate claim is the employer's refusal to make reasonable accommodations.  *Wilson*, 717 F.3d at 345.  "Implicit in the fourth element is the [] requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation."  *Haneke v. Mid–Atlantic Capital Mgmt.*, 131 F. App'x. 399, 400 (4th Cir. 2005) (discussing the ADA, citing 29 C.F.R. § 1630.2(o)(3)).  While "an employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process," liability may exist from "the employer's failure to engage in the interactive process result[ing] in the failure to identify an appropriate accommodation for the disabled employee."  *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011).

The Fourth Circuit has explained that "neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability.  Rather, courts should look for signs of . . . failure by one of the parties to make reasonable efforts to help the other [] determine what specific accommodations are necessary."  *Id.*  Obstructing or delaying the interactive process, and failing "to communicate, by way of initiation or response," may indicate

---

[2] Dkt. 25-2 at 6-7 (Ms. Williams' deposition testimony that her answer is not accurately reflected in Ms. Vickers' notes).

bad faith. *Id.* "In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility."

Both the employee and employer bear a burden of engaging in the interactive process in good faith. *Haneke*, 131 F. App'x at 400. Thus, "where it is the employee who refuses to engage in, or who causes the breakdown of, the requisite interactive process to determine a reasonable accommodation," the employer will not be liable. *Maubach v. City of Fairfax*, 2018 WL 2018552, at *5 (E.D. Va. Apr. 30, 2018) (citing *E.E.O.C. v. Kohl's Dept. Stores, Inc.*, 774 F.3d 127, 132 (1st Cir. 2014)); *see also Crabill*, 423 F. App'x at 323.

Here, a genuine dispute of material fact exists as to which party caused the breakdown in the interactive process. It is undisputed that a significant interactive process occurred prior to March 9, with both parties engaging in telephone meetings. It is also undisputed that Virginia Tech received Ms. Williams' March 9 Return to Work Release form and attachment, each of which outlined proposed accommodations. Finally, there is no dispute that Ms. Sills sent the forms to Ms. Vickers in an email. In addition to attaching the forms for Virginia Tech, Ms. Sills' email stated, "please feel free to contact me as much as necessary," and that she "look[ed] forward to [Ms. Vickers'] feedback." Dkt. 17-8 at 1, 2. Instead of contacting Ms. Sills in response to that email and the proposed accommodations, Ms. Vickers called Ms. Williams, did not speak with her, and left a voicemail. The voicemail explained that Virginia Tech found Ms. Williams' proposed accommodations "too restrictive" and that as a result "there are no reasonable accommodations that [Virginia Tech] can put in place." Dkt. 17-9. While Ms. Vickers invited Ms. Williams to call her back, she also noted any response would need to be before 12:00 noon. *Id.*

First, while Ms. Williams did not call Ms. Vickers back, there is no evidence that was in bad faith. There is also no evidence as to what time she received the voicemail. Moreover, Ms.

Williams contends that she received another call the same day, from Ms. Morris, notifying her that her employment would be terminated. The record does not contain any evidence as to the specific date of that call, and the parties contest the date. Yet the record does confirm that Ms. Morris called Ms. Williams and told her that her "employment would terminate effective the last day of short term disability." Dkt. 21-7 at 24. The date and time of the Morris call therefore bear on whether Ms. Williams' refused to engage in bad faith, or held a good faith understanding that the process was concluded. The date of the Morris call is accordingly a disputed material fact.

Second, and independently of the Morris call, there is a genuine dispute of material fact as to whether Virginia Tech caused a breakdown in the communicative process in bad faith. This fact may be inferred from three undisputed circumstances: Virginia Tech failed to successfully reach Ms. Williams on the phone; Virginia Tech placed an artificial time constraint on Ms. Williams' reply by phone, and Virginia Tech did not reach out to Ms. Sills despite her express invitation to do so. A reasonable jury could conclude that these circumstances, in conjunction with Ms. Williams' March 12 transition to long term disability, evidence bad faith.

**B. Disability Discrimination**

A claim for disability discrimination will survive summary judgment if the plaintiff produces evidence demonstrating "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that her employer discharged her (or took other adverse employment action) because of her disability." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015). It is subject to the familiar *McDonnell Douglas* burden shifting framework. *Id.*

Under the burden shifting framework, a plaintiff must first establish a *prima facie* case of discrimination or retaliation. *See McDonnell-Douglass Corp. v. Green*, 411 U.S. 792 (1973).

The burden then shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse action. *Id.* The employer's burden at this stage is one of production, not persuasion. *Id.* Finally, if the employer provides evidence of a nondiscriminatory reason for the action, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's articulated reason is a mere pretext, and that the true reason is either discriminatory or retaliatory. *Id.* "[T]he burden to demonstrate pretext merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*).

Ms. Williams has made out a *prima facie* case. First, while she was not classified as being terminated, Ms. Williams' employment ended, she no longer goes to work, and she no longer receives a salary. Virginia Tech does not dispute this. In the similar argument against retaliation, and without citing any law, Virginia Tech claims that it "[a]rguably" took no adverse action. Dkt. 18 at 17. But it is undisputed that it was Virginia Tech that transitioned Ms. Williams to long term disability automatically, and Virginia Tech that filled her position despite her attempts to return to work. An adverse employment action includes significant changes in employment status and benefits. *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011). While "[p]roviding long-term disability benefits and allowing an employee to utilize those benefits cannot be considered an adverse action," depriving her of her work and salary, of course, can. Dkt. 18 at 17

Also, Virginia Tech argues that she has not shown the causation element. Yet, the timing of Virginia Tech's actions which were prerequisites to transitioning Ms. Williams to long-term disability gives rise to a causal inference. While the transition may have occurred pursuant to policy, it was Virginia Tech that caused the delay ultimately resulting in Ms. Williams' March 9 Return to Work Release form, just days before she was automatically rolled into long-term

disability. Causing that delay, when the long-term disability sign-up is automatic based on passage of time, gives rise to a causal inference.

Virginia Tech articulated a nondiscriminatory reason for Ms. Williams' termination: Policy 1.70 of Virginia's Department of Human Resource Management Policies and Procedures Manual. That policy provides, "if an employee becomes mentally or physically incapable of performing his or her job, and there is no reasonable accommodation . . . the agency may require the employee to apply for disability." Having satisfied the burden of production, the burden shifts back to Ms. Williams to demonstrate pretext. There is a genuine dispute of material fact as to whether the articulated reason is a pretext because, by its terms, the policy only applies when there is no reasonable accommodation. As discussed above, whether a reasonable accommodation existed is a disputed material fact.

## C. Retaliation

A plaintiff making a retaliation claim "must show (i) that she engaged in protected activity and, (ii) because of this, (iii) her employer took an adverse employment action against her." *Jacobs*, 780 F.3d at 577. This claim, too, is subject to the burden shifting scheme identified above. *Id.*

Contrary to Virginia Tech's argument, Plaintiff has adduced indirect evidence supporting her claim of retaliation. Ms. Williams' January and March accommodation requests are protected activity. On March 12, Ms. Williams was rolled into the long-term disability program. The short time period between her last accommodation request and the adverse action give rise to a causal inference. To rebut this inference, Virginia Tech points to its policy: "[e]mployees who are still considered disabled after six months will transition into the [] long-term disability plan." Dkt. 21-7 at 34. But again, the temporal proximity of just three days passing between

Ms. Williams' accommodation request and her adverse action indicate a causal connection, further, there is a genuine dispute of material fact regarding the date of the Morris call.

### IV. CONCLUSION

For the reasons stated above, Plaintiff's ADA claims are hereby **DISMISSED WITH PREJUDICE**. Plaintiff's Rehabilitation Act claims premised on any discrete January 4, 2018 act is **DISMISSED WITH PREJUDICE**. The remaining Rehabilitation Act claims premised on March 9, 2018 discrete acts survive. Defendant's motion for summary judgment, Dkt. 17, is hereby **DENIED**. Plaintiff's cross motion for partial summary judgment on Count I, Dkt. 20, is hereby **DENIED**.

It is **SO ORDERED**.

March 31 2020
Alexandria, Virginia

Liam O'Grady
United States District Judge